## TOUCHARD, EXECUTOR, v. CROW et al.

A COUNTY Clerk may issue process and attest proceedings of the Courts of which he is *ex officio* Clerk over his signature as County Clerk, and leave to the title of the proceedings, or the contents of the instruments, the identification of the Courts to which they belong.

He may likewise attest and sign as County Clerk a certificate of acknowledgment, affixing thereto the seal of Court of which he is *ex. officio* Clerk, and the seal affixed with its inscription will sufficiently designate the Court of which, in that particular matter, he is acting as Clerk.

The authority of a Deputy County Clerk, in taking and certifying to acknowledgments of conveyances, is coëxtensive with that of his principal.

Where the transcript on appeal contains what purports to be a copy of a certificate of acknowledgment, made by a Deputy County Clerk, the attesting clause of which recites that the seal of Court is thereto affixed, and in the margin opposite is the word " seal " embraced in brackets, it will be presumed, nothing appearing to the contrary, that the seal affixed to the original instrument is of the Court of which the attesting officer was Clerk.

A certificate of acknowledgment to a conveyance made in 1852, was in its form correct and was attested as follows : '" Witness my hand and seal of Court affixed at office, this thirtieth day of July, A. D. 1852.   John A. Brewster, Deputy County Clerk of Sonoma county," with the proper seal of Court affixed : *Held*, that the certificate was sufficient, and entitled the conveyance to record.

The operative words of release in a simple quit claim deed are, " remise, release and quit claim."   Where the words " bargain, sell and quit claim " are employed, they operate not merely to release, but to transfer any interest which the grantor possesses at the execution of the deed.

A patent of the United States, following a final decree affirming the validity of a Mexican grant in a proceeding instituted before the United States Land Commission to obtain a confirmation of the grant, takes effect by relation at the date of the presentation of the petition to the Land Commission, and is to be regarded, so far as all intermediate conveyances are concerned, as having been executed at that time.

Thus, where on the twenty-fourth day of February, 1852, H. and others filed a petition before the U. S. Land Commission for a confirmation of a grant of land from the Mexican Government, and in the U. S. District Court, to which the proceeding had been appealed, a final decree of confirmation was rendered in November, 1855, upon which a patent subsequently issued : *Held*, that a deed made by H. on the thirtieth day of July, 1852, of his interest in the land embraced in the grant, passed the legal title subsequently acquired by the patent.

A tenant in common of an undivided portion of a tract of land is entitled to the possession of the whole tract as against all persons except his cotenants, and as a consequence may, against all others than them, maintain ejectment for the entire premises.

Thus, where the plaintiff in ejectment claimed title under H. to the whole of the

Touchard *v.* Crow.

premises sued for, through several different chains of conveyances of undivided interests, starting from one S., a grantee of H., and defendant claimed under H. by a title subsequent to and unconnected with that of S. or his grantees: *Held,* that plaintiff having shown a valid deed from H. to S., and a valid chain of conveyances of an undivided interest from S. to him, was entitled to recover from defendant the whole premises, without reference to the validity of the intermediate conveyances of the other undivided interests.

If counsel, when a case is tried by the Court without a jury, desire to present for consideration certain points of law as applicable to the facts established or sought to be established, upon which the Court might be called to charge a jury, were there a jury in the case, the proper course is to present them in the form of propositions, preceding them with a statement that counsel makes the following points, or contends as follows.

APPEAL from the Seventh Judicial District.*

The following is a copy of the deed from Heyerman and wife to Stevens, and of the certificates of acknowledgments and proof annexed, which are referred to in the opinion of the Court. All other material facts are stated in the opinion.

" Know all men by these presents, that we, J. A. F. Heyerman, of · Sonoma county, State of California, and Sophia, wife of said Heyerman, in consideration of the sum of three thousand dollars, paid to our satisfaction by Thomas H. Stevens, of the city of San Francisco, State aforesaid, by these presents do bargain, sell and quit claim unto the said Stevens, and his heirs and assigns forever, all our and each of our right, title, interest, estate, claim and demand, both at law and in equity, and as well in possession as in expectancy, of, in and to all that certain piece or parcel of land situated in said county of Sonoma, and known as the Rancho Roblar de la Miseria, with all the fences, buildings, improvements of all kinds whatsoever, hereditaments and appurtenances in any wise thereunto appertaining and belonging. In witness whereof, we have hereunto signed our names and affixed our seals this thirtieth day of July, A. D. 1852.

" J. A. F. HEYERMAN, DR. [SEAL.]
" S. HEYERMAN, [SEAL.]

" Signed, sealed and delivered in the presence of R. A. Maupin."

" STATE OF CALIFORNIA, COUNTY OF SONOMA : On this, the thir-

*In the absence of the Judge of the Seventh District, this case was tried before the Judge of the Sixteenth District.—REPORTER.

tieth day of July, A. D. 1852, before me, the undersigned, County Clerk of Sonoma county, personally appeared J. A. F. Heyerman, and S. Heyerman, his wife, to me well known to be the persons described in and who executed the foregoing instrument, and acknowledged to me that they executed the same freely and voluntarily, for the uses and purposes therein mentioned. And she, the said Sophia Heyerman, being by me made acquainted with the contents of the foregoing instrument, and examined separate, apart and without the hearing of her said husband, acknowledged to me that she executed the same freely and voluntarily, without fear, compulsion or undue influence of her said husband, and that she does not wish to retract the execution of the same.

" Witness my hand and seal of Court hereunto affixed at office, this thirtieth day of July, A. D. 1852.

[SEAL.]                                    " JOHN A. BREWSTER,
                        " Deputy County Clerk of Sonoma County."

" STATE OF CALIFORNIA, COUNTY OF SONOMA : On this second day of June, A. D. 1859, before me, a Notary Public in and for said county, personally appeared Walter D. Kent, to me known to be a creditable and competent witness, who being by me first duly sworn, stated on oath that he personally knew J. A. F. Heyerman, one of the persons named as grantor in the within deed, and whose name is subscribed thereto as a party; that he well knew the signature and handwriting of said Heyerman, and that he believed that the name of J. A. F. Heyerman was subscribed to the within deed by the said J. A. F. Heyerman ; that in the year 1852, and at the date of said deed, witness was keeping a store in the town of Petaluma, in said county, and that said Heyerman and his wife were residing in said town, and were frequently in his store ; that he had frequently seen said J. A. F. Heyerman write, and had now in his possession papers written by him ; that said Heyerman was a physician, and in signing his name always added the letters " Dr." as in the within deed ; and that said Heyerman now resided, as witness believed, out of Sonoma county ; and the said witness, Walter D. Kent, further stated on oath, that he personally knew R. A. Maupin, whose name is subscribed to the within deed as a witness

thereto; that he well knew his signature and handwriting, and that he believed the within deed was written by him, and that the name of R. A. Maupin, subscribed to the within deed as a witness thereto, was subscribed by the said R. A. Maupin; that the said Maupin was now dead, and that in A. D. 1852, and at the date of said deed, said Maupin was an attorney at law, and resided in the city of Sonoma; that he, witness, had often seen the said Maupin write, and had seen papers written by him.

"In witness whereof, I have hereunto set my hand and affixed my official seal, the day and year first above written.

[SEAL.]      "GEORGE PEARCE, Notary Public."

*John Wilson,* for Appellant.

I.   The acknowledgment of the deed from Heyerman to Stevens was not sufficiently certified to entitle the deed to record.

1. The County Clerk, as such, had no authority to take or certify to an acknowledgment. This question has been discussed in two cases before this Court—*Kendall* v. *Miller* (9 Cal. 59) and *Ingolsby* v. *Juan* (12 Id. 574)—but in neither case was it decided. He must take the acknowledgment as Clerk of a Court, and must by his signature designate the Court for which he is acting.

2. It does not appear that the seal of any Court was affixed to the certificate. The Clerk must use the seal of the Court for which he is acting as Clerk, and the seal must designate the Court. (8 Grattan's Va. R. 241; 8 Leigh, 158; 9 Id. 511; 3 McLean's C. C. R. 332.)

3. The certificate of the officer must state on its face all that is required to show that he acts in the proper official character. (*Johnson* v. *Hayes*, 2 Ham. Ohio, 55; *Simpson* v. *Brown*, 3 Yates Pa. 186; *Peralton* v. *Burton*, 3 Com. 406; 3 Cranch, 155.)

4. A Deputy County Clerk cannot take an acknowledgment, admitting that it can be done by the County Clerk.

II.   Admitting that the testator of plaintiff held an undivided interest in the property, plaintiff cannot recover in ejectment brought for the whole tract. He can only recover such undivided interest if at all. He must first resort to a partition. (*Pico* v. *Columbet*, 12 Cal. 414.)

III.   The deed to Stevens was only intended to pass the interest of the grantor in one-half of a league.

IV.   The deed to Stevens, through which plaintiff claims, was made before the grant was confirmed, and six years before the patent issued to Heyerman, the grantor; the deed, therefore, did not pass the legal title.

*George Cadwallader* and *H. P. Hepburn*, for Respondent.

I.   The certificate of acknowledgment to the deed from Heyerman to Stevens is sufficient.   The following cases show the determination of the Court to enforce the very substance of the recording acts, and not to allow them to be practically destroyed by virtue of mere technical objections.   (*Goode* v. *Smith and Wife*, 13 Cal. 81; *Henderson* v. *Grewell*, 8 Id. 581; *Whitney* v. *Arnold*, 10 Id. 531.)

II.   The patent bears date January 18th, 1858, but it shows a presentation of the claim under the grants for confirmation to the Board of Commissioners, February 24th, 1852.   The patent, therefore, took effect by relation from this last date.   (*Yount* v. *Howell*, 14 Cal. 469; *Moore* v. *Wilkinson*, 13 Id. 486; *Waterman* v. *Smith*, Id. 409; *Stark* v. *Barrett*, 15 Id. 301.)

III.   Plaintiff having declared for the entire premises can recover upon proof of an undivided interest in them.   (*Throckmorton* v. *Reese*, 5 Cal. 400; *Covillaud* v. *Tanner*, 7 Id. 38; *Welch* v. *Sullivan*, 8 Id. 165; *Pearis* v. *Covillaud*, 6 Id. 617; *Parke* v. *Kilham*, 8 Id. 77.)

To defeat this action the defendants must show that each one of the several sources of title, through which the plaintiff claims the several eighth parts, fail.   This they cannot do.

IV.   The executor of a tenant in common can maintain ejectment for his testator's interest in land.   The whole real and personal estate goes to the executor.   (Act to regulate the Settlement of the Estates of Deceased Persons, secs. 194, 195.)

He is not bound to wait a partition before claiming possession. He cannot maintain partition till in possession, and must resort to ejectment, as a preliminary step, if out of possession.   (Prac. Act, sec. 264.)

V.   The evidence shows clearly that the deeds, through which

Touchard *v.* Crow.

plaintiff claims, are conveyances of interests in the whole rancho, and not in one-fourth, as contended by appellants.

FIELD, C. J. delivered the opinion of the Court—COPE, J. and NORTON, J. concurring.

This is an action of ejectment to recover the possession of certain real estate situated in Sonoma county, constituting part of the tract known as the Rancho of Roblar de la Miseria.   The plaintiff claims under a patent of the United States, issued upon a confirmation of a Mexican grant, under the Act of Congress of March 3d, 1851. The grant was made to Juan N. Padilla by Pio Pico, former Governor of California, in November, 1845, and was approved by the Departmental Assembly in June, 1846.   It is for four square leagues of land, and embraces the premises in controversy.   On the thirteenth of June, 1849, the grantee conveyed the tract granted to Heyerman, and on the thirtieth of July, 1852, the latter, in connection with his wife, executed a conveyance of their interest to Stevens.   This conveyance was acknowledged before the Deputy Clerk of the county of Sonoma on the day of its execution, and was recorded in the office of the Recorder of the county on the twenty-third of August following.   On the second of June, 1859, proof of the execution of the conveyance by Heyerman was made before a Notary Public, and on the twenty-fourth of April, 1860, the conveyance was again recorded in the same office.   From Stevens the plaintiff traced title to the premises in controversy by sundry mesne conveyances to Matthey, his testator.

On the twenty-fourth of February, 1852, Heyerman, in connection with eight other persons, filed a petition before the United States Land Commission for a confirmation of the claim under the grant to Padilla.   The record before us does not disclose the manner in which the eight other petitioners acquired their interests, but as Heyerman, who had previously possessed the entire claim, united in the petition, it is to be presumed that they acquired their interests through him, and that his subsequent conveyance to Stevens was only intended to pass his remaining interest.   He would at least be estopped by his petition from denying that they were interested with him in the premises.   The claim was confirmed to the

petitioners by the Land Commission in February, 1853, and, on appeal, by the United States District Court in September, 1855. In November following, the United States having declined to prosecute an appeal to the Supreme Court, the petitioners had leave to proceed upon the decree of the District Court as upon a final decree.   Upon this decree, and the approved survey of the premises by the Surveyor General of the United States for California, the patent was issued.   From the patentees the plaintiff traced title to the premises in controversy to his testator—from Heyerman through the conveyance to Stevens which we have mentioned, and from the eight other patentees through various mesne conveyances, execution sales and probate proceedings.

The defendants also claim under the patent of the United States, and seek to connect themselves with it through a conveyance from Heyerman to Baylis, bearing date on the twenty-first of February, 1860, and recorded in the office of the Recorder of Sonoma county on the twenty-sixth of April, 1860.   By the conveyance to Stevens, the grantors, Heyerman and wife, bargain, sell and quit-claim all their " right, title, interest, estate, claim and demand, both at law and in equity, and as well in possession as in expectancy," in and to the tract, describing it as that piece of land situated in Sonoma county, known as the Rancho Roblar de la Miseria.   By the conveyance to Baylis, the grantor, Heyerman, " grants, bargains, sells and conveys " the tract, describing it in the same manner, with the additional designation that it was granted to Padilla in the year 1845, and by him conveyed to Heyerman on the thirteenth of June, 1849.

As will be thus seen, the principal question between the parties relates to the operation and effect of these deeds from Heyerman. The appellants contend: 1st, that the deed to Stevens was not acknowledged or proved, so as to entitle it to be recorded, and that in consequence its record did not impart any notice to them, and they are protected as *bona fide* purchasers without notice; 2d, that the deed was only a quit claim, and did not operate to pass the interest which vested in Heyerman from the confirmation of the grant and the patent of the United States; and 3d, that the deed was only intended to pass the interest of the grantors in one-half of a league of the four leagues embraced by the grant.

Touchard v. Crow.

1. The deed to Stevens, as we have stated, was acknowledged on the day of its execution, before the Deputy Clerk of Sonoma county. The certificate of the acknowledgment is in its form correct; it contains a statement of every particular required by the statute. Its concluding attestation clause is as follows : " Witness my hand and seal of Court hereto affixed at office, this thirtieth day of July, A. D. 1852. John A. Brewster, Deputy County Clerk of Sonoma county," and in the margin opposite this attestation the seal of the Court is affixed. We must at least conclude that the seal is thus affixed, for the word " seal," embraced in brackets, appears in the copy of the certificate embodied in the record. If any other seal than that of the Court, of which the officer was Deputy Clerk, is affixed to the original, that fact should have been made the ground of objection at the trial. No objection of the kind was taken, and we must therefore infer that no ground for any existed. The objection urged to the certificate is not to its form, or to the seal affixed, but to the authority of the officer to take the acknowledgment. If the County Clerk himself could take it, his deputy could also take it, for the deputy is invested by statute with the same power in all respects which the principal possesses. (Act defining the duties of County Clerks, of April 18th, 1850, sec. 3; see also *Beaumont* v. *Yeatman*, 8 Humph. 542.) The Act concerning Conveyances provides that the proof or acknowledgment of conveyances may be taken within the State by the " Clerk of a Court having a seal," and when thus taken, that the certificate shall be under his hand and the seal of the Court. The questions for determination are whether the acknowledgment under consideration was taken before the deputy of an officer of this character, and whether the fact sufficiently appears from the certificate.

The County Clerk is by the Constitution *ex officio* Clerk of the District Court, and by statute he is also *ex officio* Clerk of the County Court, Probate Court, and Court of Sessions of his county. (Const. art 6, sec. 7; Act defining the Duties of County Clerk, sec. 1; Pr. Act, sec. 644.) The statute defining his duties speaks of the acts which he is authorized or required to perform, as acts to be performed by him as County Clerk. It says each *County Clerk* may appoint one or more deputies; the *County Clerk* may

take from each of his deputies a bond for the faithful performance of his duties; the *County Clerk* shall either in person or by deputy attend each term of the County Court, District Court, Probate Court, and Court of Sessions held in his county; *he* shall issue all writs and process; *he* shall enter, under the directions of the Court, all orders, judgments and decrees proper to be entered, and the like. It would thus seem that he may issue process and attest proceedings of the Courts of which he is *ex officio* Clerk, over his signature as County Clerk, and leave to the title of the proceedings, or the contents of the instruments, the identification of the Court to which they belong. It is the usual practice for the Clerk in such cases simply to append to his individual signature his character as Clerk of the Court, or his general character as County Clerk, with the addition of his character as *ex officio* Clerk of the particular Court from which the process is issued, or in which the proceedings are taken. We have never heard the sufficiency of either of these modes of signing process or attesting proceedings questioned, nor could it be questioned successfully. This being the case, we do not perceive any principle upon which the process or proceedings should be held invalid by reason of the absence of the designation of the Court of which. the County Clerk acts as *ex officio* Clerk, provided that fact otherwise sufficiently appears upon the face of the papers. The County Clerk is by law *ex officio* Clerk of all the Courts of the State having a seal, except of the Supreme Court. He is the keeper of the seals of those Courts. The seals have inscribed upon them the name of the Courts to which they belong. The affixing of the seal, bearing the inscription mentioned, does therefore sufficiently designate the Court of which the County Clerk in the particular matter acts as *ex officio* Clerk. No one could be mistaken or misled by the omission of any further designation of the Clerk's official connection with the Court.

By the Constitution, the County Judge is required to perform the duties of Surrogate or Probate Judge, (art. 6, sec. 8) and by statute he is declared to be *ex officio* Probate Judge. (Act to regulate Settlement of the Estates of Deceased Persons, of May 1st, 1851, sec. 1.) Yet there is no uniformity in the manner in which the different County Judges sign or attest the orders and proceed-

ings in the settlement of estates before them.   Sometimes they use
their simple signatures, without any designation of their official
character, and sometimes they add the designation "County Judge,"
and sometimes "Probate Judge," and it has never been held or
supposed that the validity of the orders or proceedings was in any
respect affected by the absence of the official designation from the
signature, or the presence of the designation "County Judge" in-
stead of "Probate Judge."   It has always been considered suffi-
cient that the papers disclosed on their face the character in which
the Judge acted.

Looking then to the certificate of acknowledgment annexed to
the deed to Stevens—its attestation clause, the seal of the Court
affixed, the inscription which the seal bears—and considering the
law as to the *ex officio* character of the County Clerk as Clerk of
all the Courts in his county having a seal—and the equal authority
of his deputy—we are of opinion that it does sufficiently appear
that the acknowledgment was taken before an officer empowered to
take it, and that the certificate authorized the record of the deed;
and consequently, that its record imparted constructive notice to
subsequent purchasers from the same grantors.

We do not find any cases precisely similar to this, and therefore
directly in point, but the general current of the authorities is that
the certificate is to be sustained, if possible; and in support of it,
reference may be had to the instrument to which it is attached.
Thus in *Brooks* v. *Chaplin*, (3 Vt. 281) the certificate of the ac-
knowledgment did not show in what State the acknowledgment was
taken, and the omission was supplied by reference to the deed, in
which the grantor described himself as a resident of "Suffield, in
the county of Hartford and State of Connecticut."   The acknowl-
edgment purported to be taken within two days after the execution
of the deed in Hartford county, and the Court said that it could
intend no other than the same county of Hartford in which the deed
was supposed to have been executed.   "It is not indispensable,"
said the Court, "that the place of taking should fully appear from
the acknowledgment itself, provided it can be discovered with suffi-
cient certainty by inspection of the whole instrument."   And in
*Luffborough* v. *Parker*, (12 Serg. & Rawle, 48) the certificate of

proof given by the officer stated that A B appeared before him and made oath that he saw the grantor sign, seal, execute and deliver the deed, without stating that A B was a subscribing witness, but as it appeared upon the inspection of the deed that A B was one of the subscribing witnesses, it was held that the certificate was sufficient. The statute under which the certificate was given required that a deed should be proved by one or more of the subscribing witnesses before it could be recorded. "The Act," said the Court, "must be substantially complied with; but when substance is found, it is neither the duty nor the inclination of the Court to defeat conveyances by severe criticism on language."

From the views thus taken of the acknowledgment before the Deputy County Clerk, it has become unnecessary to consider the proof subsequently made of the execution of the conveyance before a Notary Public, and the effect of the second record of the deed on the twenty-fourth of April, 1860.

2. The deed to Stevens is not strictly a quit claim. The operative words of release in a simple quit claim deed are "remise, release and quit claim." Here the words "bargain, sell and quit claim" are employed, and they operate not merely to release, but to transfer any interest which the grantors possessed at the execution of the deed. Whether the words "in expectancy" can be considered, in the connection in which they are used, as referring to any greater or further estate in the premises, which the grantors might acquire in future, it is unnecessary to express any opinion. At the time the deed was executed, the claim of Heyerman and others to the land embraced in the grant to Padilla was pending before the Land Commission for confirmation. The decree of confirmation affirmed the validity of that grant, and of the claim of the petitioners. The patent following the confirmation took effect by relation at the date of the presentation of the petition to the Land Commission, on the twenty-fourth of February, 1852. As the deed of the United States, it is to be regarded, so far as all intermediate conveyances of the petitioners are concerned, as having been executed at that time. (*Moore* v. *Wilkinson,* 13 Cal. 478; *Yount* v. *Howell,* 14 Id. 465; *Stark* v. *Barrett,* 15 Id. 361; *Ely* v. *Frisbee,* 17 Id. 250; *Leese* v. *Clark,* 18 Id. 570.) The deed

to Stevens must therefore be held to have passed the interest acquired by the patent.    In *Landes* v. *Brandt*, (10 How. 370) the Supreme Court of the United States applied the doctrine of relation for the protection of a title acquired by a Sheriff's deed upon a sale, under execution, of the confirmee's interest made after the presentation of his claim, and previous to the confirmation.    The claim referred to in that case was filed in 1805, the Sheriff's sale was made in 1808, the confirmation was had in 1811, and the patent issued in 1845, and the Court said : "Applying the doctrine of relation, and taking all the several parts and ceremonies necessary to complete the title together, 'as one act,' then the confirmation of 1811 and the patent of 1845 must be taken to relate to the first act—that of filing the claim in 1805.    On this assumption, intermediate conveyances made by the confirmee, or by the Sheriff on his behalf, of a date after the first substantial act, are covered by the legal title, and pass that title to the alienee.    And on this ground the deed made by the Sheriff to McNair is valid."

3.  The position that the deed to Stevens was only intended to pass the interest of the grantors in one-half of a league of the four leagues embraced by the grant, finds no support from the deed itself, or from anything which appears in the record.    The deed in terms conveys, as we have stated, all the interest of the grantors in the tract known as the Rancho of Roblar de la Miseria—the designation given to the tract granted to Padilla.    The tract is thus designated in the several conveyances produced on both sides.  Subsequent to the deed to Stevens, numerous parties became possessed of the undivided fractional interests in the premises, and some of them conveyed to others their interests only in a portion of the four leagues—reserving from the operation of their conveyances a parcel known as the Heyerman tract, embracing half a league, and from this circumstance the appellants' counsel draws the inference that the deed to Stevens was only intended to transfer the interest in this half league.    It is hardly necessary to observe that there is nothing in this circumstance to warrant the inference.    The half league may have been called the Heyerman tract for many reasons.    Heyerman may have at one time resided upon this portion of the grant, or have inclosed it, or cultivated it, and it may

have been thus called to distinguish it from the general tract. Whatever the reason for the designation, the fact neither shows nor tends to show that the deed to Stevens (even were this permissible against its language) only applied to the half league, or that the grantors intended that it should only so apply.

The views we have thus expressed as to the operation of the deed to Stevens, dispose of the principal questions presented by the appellants, and in fact, of the merits of the case. The other questions raised, so far as they are covered by the grounds of the appeal embodied in the record, (and only such can we notice) arise upon the rulings of the Court below as to various transfers of undivided fractional interests in the premises. Some of these transfers were made under proceedings had in the Probate Court, and the validity of the proceedings is attacked; one of them was made under a power of attorney from a married woman, and her capacity to confer the power is denied; and one of them has a certificate of acknowledgment which is impeached. Now it is of no consequence whether the rulings of the Court below upon these matters were erroneous or not. The admission in evidence of the conveyances attacked did not affect the right of the plaintiff to recover, nor would their exclusion have defeated him. If the conveyances were valid, the testator of the plaintiff was at his death seized in fee of the entire premises in controversy·; but if they were invalid, he was only seized in fee of certain undivided interests. In either case, he was entitled at the time of his death to the possession of the entire premises as against the defendants, and all parties except his cotenants; and as a consequence, could have recovered in ejectment against them. In *Stark* v. *Barrett* (15 Cal. 371) the complaint alleged, as in the present case, that the plaintiff was seized in fee of the premises, but the proof showed that he was only thus seized as a tenant in common of one undivided half, and we held that he was notwithstanding entitled to recover against all parties but his cotenant, and persons holding under him. "Under the allegation of seizin in the complaint," we said, "it was sufficient for the plaintiff to establish any interest in the premises which gave him a right of possession." (See also *Smith* v. *Starkweather*, 5 Day, 210; *Bush* v. *Bradley*, 4 Id. 302.) And by our law the executor

Touchard *v.* Crow.

is required to take possession of all the estate of the testator, both real and personal, and is authorized to maintain any action to recover the possession of such property, which the testator might have maintained. (Act to regulate the Settlement of the Estates of Deceased Persons of May 1st, 1851, secs. 194, 195.)

This action was tried by the Court without the intervention of a jury. Of course, in such cases the Court not only performs its peculiar and appropriate duty of deciding the law, but also discharges the functions of a jury, and passes upon the facts. The counsel of the appellants impressed, as it would seem, with this dual character, requested the Court to charge itself as a jury, and handed in certain instructions for that purpose. The Court thereupon formally charged that part of itself which was thus supposed to be separated and converted into a jury, commencing the charge with the usual address, " Gentlemen of the jury," and instructing that imaginary body, that if they found certain facts they should find for the plaintiff, and otherwise for the defendants, and that they were not concluded by the statements of the Court, but were at liberty to judge of the facts for themselves. The record does not inform us whether the jury thus addressed differed in their conclusions from those of the Court. These proceedings have about them so ludicrous an air that we could not believe they were seriously taken, but for the gravity with which counsel on the argument referred to them. If counsel, when a case is tried by the Court without a jury, desire to present for consideration certain points of law as applicable to the facts established or sought to be established, upon which the Court might be called to charge a jury, were there a jury in the case, the proper course is to present them in the form of propositions, preceding them with a statement that counsel makes the following points, or counsel contends as follows. The mode adopted in the present case, though highly original, is not of sufficient merit to be exalted into a precedent to be followed.

Judgment affirmed.