# HERMAN MULLER v. ANGUS L. BOGGS AND CHARLES CLARK.

FINDINGS OF FACT BY A REFEREE.—Where a cause is tried by a referee, and the testimony is conflicting, the Supreme Court will not disturb his findings of fact.

CONSTRUCTION OF A DEED.—Where a deed conveys a tract of land by name and description, and then excepts from its operation certain parcels of the tract, and the language of the exception leaves it doubtful whether it was the intention of the grantor to except a particular parcel, the deed must be construed most favorable to the grantee, and the doubt resolved in his favor.

DEPUTY—POWER OF.—Where the statute confers on an officer power to appoint a deputy, but does not prescribe the duties of the deputy, the deputy has full power to do any and all acts which his principal may perform by virtue of his office.

COUNTY RECORDER—DEPUTY OF.—A Deputy County Recorder, appointed under the provisions of the Act concerning County Recorders, of the 26th of March, 1851, had power in the name of his principal to take and certify acknowledgments of deeds.

SAME.—The ninth section of said Act, enabling the deputy to perform the duties of Recorder in case of a vacancy in the office, or the absence or inability of the Recorder to perform his duties, is an enlargement of and not an abridgment of the powers of the deputy.

COUNTY RECORDERS.—The powers conferred upon County Recorders by the Act of March 26th, 1851, to take and certify acknowledgments of deeds, is an incident of the office, and not personal to the incumbent.

DEED.—The words "grant, bargain, sell, and convey," in a deed, operate not merely to release, but to transfer any interest which the grantor had in the land at the date of the deed.

TENANTS IN COMMON—RENTS AND PROFITS.—Where one tenant in common obtains judgment against a stranger for the possession of the entire premises, he cannot recover all the rents and profits, but only a proportion thereof corresponding to his interest in the land.

SAME.—If, in such case, judgment is rendered for all the rents and profits, the Supreme Court will not reverse the judgment, provided the plaintiff offer to remit the excess; but, thus modified, it will be allowed to stand.

APPEAL from the District Court, Twelfth Judicial District, City and County of San Francisco.

The following is the certificate of acknowledgment of the deed from Vallejo to Wohler, dated December 20th, 1851:

" STATE OF CALIFORNIA, }
          County of Napa. }
  " On this, the twentieth day of December, A. D. one thousand eight hundred and fifty-one, personally appeared before

me, the undersigned, Recorder in and for the county aforesaid, Salvador Vallejo, known to me to be the person described in and who executed the foregoing instrument, who acknowledged to me that he executed the same freely and voluntarily, for the uses and purposes therein mentioned.

" In witness whereof, I have herewith set my hand and seal of office, this the day and year in this certificate above written.

[L. S.]               " R. H. LAWRENCE, Recorder.

               " By L. N. EDMONSTON, Dep. Rec."

Salvador Vallejo, in January or February, 1850, caused a portion of the Rancho de Napa, containing about one thousand nine hundred acres, to be surveyed into lots and streets, and numbered the lots up to fifty. This plat was called the "Pueblo de Salvador," and was recorded.

This action was brought to recover the possession of lots numbered 25, 26, 31, 32, and fractional lots numbered 27 and 30, situated in said Town or Pueblo de Salvador, in the County of Napa.

The other facts are stated in the opinion of the Court.

*Hoge & Wilson,* for Appellants.

The deed of the 20th of December, 1851, did not, and was not intended by the parties, to include any of the lots of the Pueblo or Town of Salvador, and particularly any of the lots in controversy in this suit.

The case of *Doe ex dem. Hampton* v. *Cowles,* reported in 4th Dev. & Batt. N. C. Rep. p. 16, is remarkably similar in its details to the case before the Court. In that case the plaintiffs claimed title to the lots in question under the will of Hampton, devising to them his *home plantation;* previously, the Town of Hamptonville had been laid out, by the consent of Hampton, on a portion of his home plantation, and the lots sold. The heirs claimed two of these lots as part of the home plantation, and as passing under the clause of the will devising to them that plantation. The Court " were very clearly of opinion that the land so laid off for a town was thereby

severed from the whole tract, or 'home plantation,' so as not to pass under that description in the devise."

In the case of *Aldrich et al.* v. *Gaskill*, 10 Cushing, 155, the devise was of "the farm on which I now live, consisting of about one hundred and fifty acres, and all the buildings thereon," and the question was whether this description included a portion which had been separated from the main portion of the farm by two small lots which had been sold for house lots; it, however, having been used and let with the other portions of the farm. On page 158, Mr. Chief Justice Shaw says: "Having been once a part of the farm, we think that there is no decisive act showing the intention either of the father or son to sever it from the farm. The word '*farm*' is of large import," etc., * * * "but, as to the term, it is said to be a collective word, consisting of divers things gathered into one, as a messuage, land, meadow, pasture, wood, common," etc. * * * "In this country it is a parcel of land, used, occupied, managed, and controlled by one proprietor * * *. The letting of small portions of it for the season or for short terms did not sever it, nor did the *intention* to sell it for house lots, *not executed*."

In our case, unlike the Massachusetts case, the intention was actually executed in the most solemn form, and placed upon the records of the county. It would be easy to imagine what would have been the opinion of the learned Chief Justice, who delivered the judgment of the Court in that case, upon similar facts to those existing in the case at bar.

In further support of our position, we also refer to the following cases, the limits of a brief not permitting us to specially quote from the facts and opinions of each case: *Bell* v. *Sawyer*, 32 N. H. 72; *Brendlinger* v. *Brendlinger*, 26 Penn. 132; *Allen* v. *Allen*, 2 Jones' Equity, N. C. 235; *Venable* v. *McDonald*, 4 Dana, 337, 338; *Stone* v. *Clark*, 1 Metcalf, 378; *Gerrish* v. *Towne*, 3 Gray, 82; *Sargent* v. *Adams*, Ib. 72.

But the important question is now presented: Was the Wohler deed properly acknowledged, so as to entitle it to go upon record, and thus become legal notice to any one?

23

We confidently contend that it was not. A Deputy Recorder, under the law, had no power to take an acknowledgment of a deed. The law casts that duty and power upon the Recorder as one *personal* to himself, and having no connection with his official duties as Recorder. There is no analogy between the case of a Deputy Recorder and a Deputy Clerk or Sheriff. The statutes regulating their duties are essentially different. The provisions of the statutes in relation to Clerks, Sheriffs, County Surveyors, and Recorders, will be found in Compiled Laws, page 193, sections 3 and 5; page 713, sections 13, 14, 15, and 16; page 839, sections 8, 9, and 26; pages 367, 368, and 130.

A Deputy Clerk, by express provision of law, has the same power, *in all respects,* as his principal. The Act of 1850, establishing Recorder's offices and defining the duties of the Recorder, gave him no power to take an acknowledgment of a deed. It was not until the Act of 26th March, 1851, that any such power was given to the County Recorder. The twenty-sixth section of that Act first authorized and empowered the *County Recorder* to take an acknowledgment of a deed. In both Acts, the whole official duties of the Recorder as such are prescribed and regulated. The sections in relation to deputies and their duties are the same in both Acts. Section seven of the Act of 1850, and section nine of that of 1851, provide that: " In case of a *vacancy* in the office of Recorder, or his *absence or inability* to perform the *duties of his office,* the deputy shall perform the *duties of Recorder* during the continuance of such vacancy, absence, or inability." It will be perceived that the deputy, under the provisions cited, has no power even to perform the *ordinary duties* of the Recorder as such, except in the contingencies named. (*McRaun* v. *McGuire,* 9 S. & M. 49, 50,)

*J. McM. Shafter,* for Respondents.

The question as to the ackowledgment of the deed from Vallejo to Wohler must be decided for us.

We think there can be no doubt but that a County Recorder could take an acknowledgment by deputy.

It cannot be denied that the act of taking an acknowledgment is a mere ministerial one. (*Bours* v. *Zachariah*, 11 Cal. 281; *Elliott* v. *Piersoll*, 1 Peters, 339.)

It is equally true that every ministerial officer can make a deputy, and when so made he has all the power of his principal, and must act in his name. (5 Comyn's Digest, Officer, D. 1, 3; Rolles' Abridgment, 591; 1 Salkeld, 96; Allen on Sheriffs, 76, 8; 1 Bouvier's Law Dic. 7, 447; *Lynch* v. *Livingston*, 8 Bar. S. C. 463; 2 Seld. 432, 433; *Hope* v. *Sawyer*, 14 Ill. 254, 7; *Moon* v. *Farrow*, 3 A. K. Marsh. 41; *Beaumont* v. *Yeatman*, 8 Humph. 542; 20 Mo. 5 Bennett, 468; 5 Cal. 449; 2 J. 70; *Touchard* v. *Crow*, 20 Cal. 150.)

These cases establish: First—That taking an acknowledgment is a ministerial act. Second—That it ought to be certified by a deputy, in the name of his principal. Third—That any act which is to be performed *in the office* or by the *officer* may be done, and thus certified by the deputy. Fourth—That it makes no difference that the statute in part defines the duties of either the principal or the deputy.


By the Court, SANDERSON, C. J.

This is an action for the possession of certain lots in the Pueblo de Salvador, the same being a part of four leagues of land granted by the Mexican nation to Salvador Vallejo in 1838, called the Rancho de Napa. Both parties claim to have derived title from Vallejo.

The plaintiff claims by deed from Vallejo to Wohler, dated on the 20th day of December, 1851; and by deed from Wohler to Frank, dated on the 20th day of March, 1852; and by deed from Frank to himself, dated on the 21st day of July, 1857; and by deed from Wohler to himself, (for further assurance,) dated on the 5th day of January, 1858.

The defendant claims by deed from Vallejo to Woodman, dated February 12, 1852; and by deed from Woodman to

Ritchie, dated August 11, 1854; and by deed from Ritchie's executors to himself, dated on the 15th of March, 1858.

The lots in controversy were conveyed by Vallejo and wife to one Guttery, by deed dated on the 22d day of July, 1851, and reconveyed by Guttery to Vallejo and wife by deed dated on the 20th of August, 1851.

On the 19th day of November, 1858, the plaintiff conveyed an undivided fourth of the land in question to O. L. Shafter and others.

The case was tried by a referee, who found the issues in favor of the plaintiff, and assessed the rents and profits at the sum of two thousand eight hundred dollars, and reported a judgment in favor of the plaintiffs for the possession of the land and the full amount of the rents and profits as assessed by him. The defendant moved for a new trial, which was denied, and he appeals from the judgment and the order refusing a new trial.

The principal questions involved in the case arise upon the deed from Vallejo to Wohler of the 20th of December, 1851.

First—It is claimed by the defendant that the lots in question did not constitute a part of the Rancho de Napa at the date of the deed, and therefore Vallejo's title thereto did not pass under the description contained in the deed.

Second—It is further claimed that if the lots did form a part of the Rancho de Napa at the date of the deed, they belonged to that portion of the rancho which is expressly excepted from the operation of the deed by its own terms.

Third—It is further claimed that the deed was not acknowledged before a person authorized by law to take the acknowledgment of deeds, and that therefore the record of the deed did not impart constructive notice to subsequent purchasers in good faith.

1. The description contained in the deed is in the following words: "All his right, title and interest in and to all the land belonging to the Rancho de Napa, or all the land appertaining to the rancho of that name, granted to the said party of the first part by the Mexican Government, which has not been

before the date of this instrument sold and conveyed by the said party of the first part by deeds which have been heretofore duly recorded in the office of the Recorder of the County of Napa."

It is not controverted but that the land in question is a part of the grant from the Mexican nation to Vallejo, under the name of the Rancho de Napa, but it is claimed that prior to the date of the Wohler deed the land in question, together with other land, had been segregated from the rancho and dedicated to town purposes, under the name of the Pueblo de Salvador, by the act and direction of Vallejo, and that it was subsequently treated by him as something distinct from the Rancho de Napa, and was so regarded in the neighborhood, and that hence it did not in fact constitute a part of the Rancho de Napa at the date of the deed to Wohler.

We are inclined to think that the qualifying words "granted by the Mexican Government," make the description broad enough to cover the entire grant from the Mexican nation to Vallejo ; but it is not necessary to decide that question.  The question as to whether the land in controversy constituted a part of the rancho or not, at the date of the deed, was fairly submitted to the referee upon the extrinsic testimony offered by the parties respectively.  The referee found that it did. The testimony was conflicting, and, under the previous uniform rulings of this Court, we cannot disturb that finding ; but, independent of this consideration, we are satisfied that the finding of the referee in this particular was right.  Without particularizing the evidence, it is sufficient to say that in our judgment the finding is supported by a preponderance of testimony largely in favor of the plaintiff.

2. A portion of the Rancho de Napa is expressly excepted from the operation of the deed, and it is next contended that by a fair construction of the language in which the exception is expressed, the lots in question are embraced in the excepted portion.  The lands excepted from the operation of the deed are such as had been previously sold and conveyed by deeds duly recorded in the office of the Recorder of Napa County ;

and it is argued that the lots in question, having been previously sold and conveyed, by deed duly recorded, to Guttery, notwithstanding they were subsequently, and prior to the execution of the deed to Wohler, reconveyed by Guttery to Vallejo and wife, come within the letter of the exception. This position cannot be maintained without furnishing an apt illustration of the legal maxim, *Quæ hæret in litera hæret in cortice.* It was manifestly the intention of Vallejo to convey all the land the title to which was still in him. But, admitting that the letter and not the spirit of the language must govern, it may be safely affirmed, from the evidence upon this point, that the lots in question, although conveyed, were never sold by Vallejo to Guttery. What was the object of the conveyance does not appear. It is characterized by one of the witnesses as " a piece of fooling with the title." No consideration was given by Guttery, as appears recited in the deed by which he reconveyed to Vallejo ; and the conveyance and reconveyance were both made in less than a month—the former being dated on the 22d of July, and the latter on the 20th day of August following. In order to bring the lots in question within the letter of the exception it must appear that they were *sold*, as well as *conveyed*, and it can hardly be claimed, in view of the foregoing facts, that such was the case. The most that can be said in favor of the defendant's theory is, that the language of the exception leaves it doubtful whether it was the intention of Vallejo to except the lots in question. Where such is the case the deed must be construed most favorable to the grantee. (*Jackson* v. *Hudson*, 3 John. 375 ; *Jackson* v. *Gardner*, 8 John. 394.)

We attach no significance to the fact that the wife of Vallejo was joined with him as grantee in the deed from Guttery to them. They both appear as grantors in the deed to Guttery, which furnishes a probable reason why they both appear as grantees in the deed from him to them. The effect of the latter deed was to restore the land to its former condition in regard to the title, and subjected it once more to the absolute dominion of Vallejo. Admitting that by these steps the wife

of Vallejo became vested with some interest in the land which she did not before possess, the same was a community interest, subject to the *jus disponendi* of the husband.

3. The acknowledgment was taken before the Deputy Recorder of Napa County, and certified in the name and as the act of his principal; and it is next claimed by defendant that the deputy had no authority to take the acknowledgment.

By the twenty-sixth section of the Act concerning County Recorders, of the 26th of March, 1851, (Compiled Laws, page 388,) County Recorders are empowered to take within their respective counties the acknowledgment and proof of all instruments and papers which may be by law recorded. By the eighth section of the same Act the Recorder of each county is authorized and empowered to appoint a deputy, who shall hold his office during the pleasure of the Recorder. Nothing is said in the Act concerning the duties of the deputy, except what is found in the ninth section, which provides that " in case of a vacancy in the office of Recorder, or his absence, or inability to perform the duties of his office, the deputy shall perform the duties of Recorder during the continuance of such vacancy, absence or inability;" and it is argued that the deputy has no power except what is conferred by the foregoing language, and that a vacancy in the office, or the absence or the inability of the Recorder, are conditions precedent to the exercise of any power or the performance of any act on the part of the deputy. We do not so read the statute. In our judgment the Legislature do not intend to define what shall be the duties of the deputy, except in the contingencies named in the ninth section, leaving the measure of his power under other circumstances to the common law. The ninth section should be read as an enlargement of his powers, and not as a restriction upon them. To guard against the inconvenience which might result to the public in case of a vacancy in the office of Recorder, or his absence or inability, was the design of the ninth section, and to that end it makes the deputy, in the contingencies named, Recorder *de facto.* Under the construction contended for, the Recorder would be unable to avail

himself of the services of a deputy, except as provided in the ninth section, which might not unfrequently result in great detriment to the interests of the public, from mere inability on his part to perform the amount of labor necessitated by the business of the office. If a vacancy in the office, or the absence or inability of the Recorder, are conditions precedent to the exercise of power by the deputy, such conditions would have to be recited in every official act of the deputy in order to impart to it any validity. In the absence of language to that effect, so clear and explicit as not to admit of doubt, we cannot intend that the Legislature designed consequences so unusual and absurd.

The power to appoint a deputy is expressly conferred upon the Recorder, and the duties of the deputy not being prescribed, as we hold, except in the contingencies named in the ninth section, it follows that his official power is to be ascertained by a resort to the common law. At common law there can be no question but that the deputy, where the power to appoint one exists, has full power to do any and all acts which his principal may perform by virtue of his office.

In *Parker* v. *Kett*, 1 Salkeld, 95, this question came before the Court of King's Bench, in England, and Chief Justice Holt, who delivered the opinion of the Court, said : " Clerk, who was Mr. Keck's deputy, (and so it is of any other deputy, where a deputy may be appointed,) had full power to do any act or thing which his principal might have done. That is so essentially incident to a deputy, that a man cannot be a deputy to do any single act or thing, nor can a deputy have less power than his principal ; and if his principal makes him covenant that he will not do any particular thing which the principal may do, the covenant is void and repugnant ; as if the Under Sheriff covenant that he will not execute any process for more than twenty pounds without special warrant from the High Sheriff; this is void, because the Under Sheriff is his deputy, and the power of the deputy cannot be restrained to be less than that of his principal, save only that he cannot make a deputy, because it implies an assignment of his whole power,

Muller *v.* Boggs *et al.*

which he cannot assign over." (See also Comyn's Digest, Officer, D; Rolle's Abridgment, 501; Allen on Sheriffs, 76.)

If the taking of acknowledgments be an official act pertaining to the office of Recorder, there can be no doubt but that it may be lawfully performed by a deputy; and this brings us to the principal question involved in the point under consideration. It is claimed by the learned counsel for the appellant that the power in question is personal to the *incumbent* of the office of Recorder, and therefore forms no part of his official duty as Recorder. A short and conclusive answer to this theory is found in the Act of the 26th of March, 1851, before cited. The first section of that Act creates the office of Recorder, and the subsequent sections clearly define and prescribe the duties and powers of the incumbent of that office, and among them we find the power to take the acknowledgment of all instruments and papers which may be by law recorded. Were this power omitted from the Act creating the office and conferred by some other entirely separate and independent Act, there would be more plausibility in the theory advanced by the appellant; but when we find it incorporated in the Act creating the office and prescribing the duties and powers of the officer without any mark showing that it is *sui generis,* and standing upon a foundation distinct from that upon which the other enumerated powers are based, the force of the argument is wholly destroyed, and the conclusion is inevitable that the Legislature intended to make the power an incident of the office and not personal to the incumbent. The power in question comes from the same source at the same time and through the same channel as the other powers, the existence of which constitutes the office. Like the other powers it goes and comes with the office. The officer takes it the same as the other powers are taken, and loses it in like manner upon the expiration of his term of office.

The Act defining the duties of the County Clerk (Compiled Laws, p. 192) provides that he may appoint deputies, who shall have the same power in all respects as their principal.

24

Under this statute it was held in *Touchard* v. *Crow*, 20 Cal. 150, that the deputy had the power to take acknowledgments. In that case the power of the deputy was derived from and founded upon the statute; but the statute, as we have shown, is merely declaratory of the common law. The deputy derives no power from the statute which he would not have possessed by virtue of the common law, had the statute remained silent upon the subject (1 Salkeld, 95). Thus the Deputy Recorder is placed upon the same footing as the Deputy Clerk, and if the latter has the power the same is true of the former.

Whether the certificate of acknowledgment states that the grantor appeared before the principal or the deputy, or whether it be signed by the deputy in his own name only, seems to be immaterial. In *Touchard* v. *Crow*, the certificate was to the effect that the grantor appeared before the principal and was signed by the deputy without the name of his principal, and the acknowledgment was held to have been properly taken and certified. In *Abrams* v. *Errin*, 9 Iowa, 87, the certificate was the same as in the present case, and was signed in the same manner, and was held to be good. The Court said: "From the certificate in this case it may fairly be presumed that the deed was acknowledged before the Clerk and his name signed by the deputy." Thus it seems that either form is sufficient, and it is immaterial whether the certificate purport to be the act of the principal or the deputy. If it appear that the person taking the acknowledgment had the power to do so, it is sufficient. The law looks to the substance and not the form, and it is the policy of the law to uphold these certificates if possible. (*Touchard* v. *Crow*.)

We think that the acknowledgment of the deed from Vallejo to Wohler was taken before a person authorized by law to take the same, and that the certificate is in due form.

4. Several points are made by the learned counsel for appellant, founded upon the hypothesis that the several deeds under which the plaintiff claims are mere quitclaim deeds. It is not necessary to notice these points in detail, for the reason that the hypothesis upon which they are founded is erro-

neous.   The deeds in question are not mere quitclaims.   The granting or operative words in a simple quitclaim deed are " remise, release and quitclaim."   The words of grant in the deed from Vallejo to Wohler, and from Wohler to Frank, and from Frank to Muller, the plaintiff, are, " grant, bargain, sell, and convey," and they operate not merely to release but to transfer any interest which the grantor had in the land at the date of the deed.   In *Touchard* v. *Crow* the words of grant were " bargain, sell and quitclaim," and it was held that the deed was something more than a mere quitclaim, and was sufficient to pass and transfer any interest which the grantor had.

5. It is lastly claimed that the plaintiff, being a tenant in common with others, as appears from the testimony, and owning only a three-fourths interest in the land, was entitled to recover only three fourths of the rents and profits, and that therefore the judgment, being for the full amount, is erroneous, and must be reversed.   In this particular the judgment is erroneous, (*Clark* v. *Huber*, 20 Cal. 196,) but the respondent offers to remit one fourth of the judgment for rents and profits.   This he has a right to do, (*Doll* v. *Feller*, 16 Cal. 432 ; *De Costa* v. *The Massachusetts Flat Water and Mining Company*, 17 Cal. 613,) and the judgment will therefore be modified in accordance with that offer, and thus modified it will be allowed to stand, but the respondent must pay the costs of the appeal.

Ordered accordingly.

Mr. Justice SHAFTER, having been of counsel, did not sit on the trial of this case.

Mr. Justice CURREY, having been counsel in another case involving the title to the same land, has taken no part in the decision of this case.