By the Court, Hogeboom, J.
The question presented for the consideration of the court in this case is, whether the defendant ought to remain under arrest within the provisions of subdivision two of section 179 of the code. That section authorizes the arrest of a party in an action for money received or property embezzled or fraudulently misapplied by a public officer, or by a person in a fiduciary capacity, or for any misconduct or neglect in office. The question was argued wholly upon the effect of the judicial proceedings taken in England upon the case, and I do not therefore propose to discuss the question whether the defendant, for acts done in England, amounting to fraud or official misconduct towards that government, can be held to arrest here as a public officer, or guilty of official misconduct; or whether our statute is limited in its operation to cases of misconduct occurring within its own jurisdiction or towards its own government. The precise question to be disposed of therefore is, whether the legal pro - ceedings which have taken place in England have essentially altered the original cause of action and so deprived it of its original character or qualities, that in its present shape the action can no longer be said to be an. action for money, received or property embezzled.or fraudulently misapplied by the defendant as a public officer, or for misconduct or neglect' in office. This must be determined by ascertaining the legal characteristics of the cause of action on which the plaintiff *205 must rely for a recovery in the form of action which he has adopted. I say the cause of action on which he must rely for a recovery, rather than the cause of action on which he has prosecuted or which he has set forth in his complaint; for if all the facts as now developed, show that he must rely upon the extent and inquisition, and that he cannot go back to the original official misconduct as the ground of recovery, then we must look at the extent and inquisition and determine' whether they have so far altered, merged or extinguished the original cause of action as " to deprive it of those properties upon which the right to obtain an order of arrest is founded. We are driven therefore to investigate the character and effect of the proceedings in England, in order to determine this motion. These proceedings are denominated in the complaint in this action a writ of extent and an inquisition thereon, but I think improperly so. They are merely the commission and inquisition which are resorted to in England as preliminary to, and the foundation of, the writ of extent and inquisition which are subsequently issued and taken. So far as I have been able to gather or understand the practice in England upon this subject it is this.
When the queen desires to recover a simple contract debt against a subject, she may proceed by action of debt, or by a scire facias or extent; but writs of sci. fa. or extent must be founded upon matter of record, and therefore before proceedings can be taken to collect a simple contract debt, it must be entered of record. (2 Tidd’s Pr. 1092. Regina v. Ryle, 9 Mees. & Wels. 239.) To put the simple contract debt in this shape, a commission is issued out of the court of exchequer, directed to two .commissioners, and always executed in Middle-sex, to inquire as to the indebtedness and its amount, under which an inquisition is taken to find the debt. When thus taken, returned and filed, it becomes matter of record, and the proper foundation upon which a writ of extent issues. It is precisely this, and no more, which has been done in the present case, according to the exemplified proceedings which *206 are presented on this motion. Ho notice to the defendant is given of the execution of this commission, and none was given to the defendant in this case; and generally no evidence is given of the debt in these preliminary proceedings, except the affidavit of danger which is made for the purpose of procuring the writ of extent which is the next proceeeding. (2 Tidd’s Prac. 1093.) This affidavit states the existence and origin of the debt and that it is in danger of being lost, in consequence of the defendant’s insolvency, bankruptcy or absconding, or other act leading to a like conclusion; then a fiat issues for a writ of extent, signed by the chancellor of the exchequer or a baron, and upon this, (after the preliminary inquisition is returned and filed,) the writ of extent issues, This writ when issued to collect a debt due to the queen, (as it would be in the present case if the proceedings were .continued in England,) is called an extent in chief. When issued, as it sometimes may he, in behalf of the crown debtor, (though in the name of the king or queen,) against his debtor, it is called an extent in aid, because its object is to aid in obtaining payment of the debt due the crown. This writ is directed to the sheriff, and commands him to enter same and take defendant, and to inquire by a jury what lands and tenements, goods and chattels, and debts, the defendant has, (or had,) and to appraise and extend the same, and take and seize them into the king’s (or queen’s) hands. (2 Tidd’s Prac. 1094. Sewell on Sheriffs, 264. Watson’s Sheriff, 247.) Under this writ an inquisition is taken in obedience to its injunctions; and on its execution all parties interested may appear and give evidence, and sometimes the court is applied to, to require reasonable notice of its execution to be given, although no notice is given in ordinary cases. As yet it will be observed there is no command to sell the property seized. Therefore, on the return day of the writ of extent, a rule is entered that if no one appear and claim the property of the goods in a se’nnight, a writ of venditioni exponas shall issue to sell the same. (2 Tidd, 1115. Sewell, 281.) If there is no appearance the *207 property is sold under the last named writ. If the defendant (or other parties interested in the property,) appear, as he may do, he may oppose the proceedings, which is done principally in two ways : either by a motion to set aside the proceedings, if there are legal objections thereto, or by a traverse. On a traverse the party enters his appearance and claim ofproperty; then a rule to plead is entered, and the defendant puts in his pleas, which may contain any matter of defense, and among others, that the debt does not exist, or has been in some way paid or satisfied. To these pleas a replication (if necessary,) is interposed, and on an issue being formed, the cause goes to trial in the ordinary way before a jury. (2 Tidd, 1124 to 1128.) A postea is made up and a rule for judgment entered. In practice, except where the defendant wishes to bring a writ of error, a judgment is seldom entered up when the verdict is in favor of the crown ; as the latter is already in possession of the property under the writ of extent. Eor does an execution issue, the cause being left to take the same course as if no appearance or claim had been put in. If the defendant succeeds on the trial, he is restored to the property by a writ of amoveas manus. (2 Tidd, 1128,1129.)
This brief recital of the English practice will help materially to illustrate this case. The proceedings in England so far as they have taken place, are only preliminary in their character— entirely ex parte—and only resorted to as the foundation for a proceeding peculiar to England, at any rate wholly unknown to us-under our present system; to wit, the writ of extent. It is possible that in England, an action of debt might lie in behalf of the crown upon the debt thus found by these preliminary proceedings, as it would lie upon the simple contract debt existing before the proceedings were initiated. I do not know whether this is so or not. But if it be so, I should have some doubt, if England had a statute like ours in regard to arrest, whether the character of the claim would be thereby so entirely metamorphosed, as to forbid an arrest. I should think it certainly would not be, if the plaintiff had his election, *208 either to sue upon the original simple contract debt, or the debt of record, which was the result of the preliminary proceedings. There would have occurred no satisfaction of the debt, no voluntary change by the mutual consent of the parties of the character of the debt, no particular equity for depriving the plaintiff of his original remedies; nothing indeed occurring but a proceeding which gave greater certainty, precision and permanency to the debt. Still if the plaintiff was restricted to his remedy upon the debt of record, it might well be said his came of action was not the same as at first. In the first proceeding he would be obliged to proceed upon the original cause of action, the simple contract debt. In the other case, he would be obliged to proceed upon the record debt, and would neither be required or allowed to go back to the original cause of action. But taking the facts of this case, I do not see how he could found an effectual or conclusive cause of action upon an ex parte proceeding. It is, as to the defendant, as if it had never taken place. I know of no transaction upon which a right of action against another can be founded, unless he has in some way become a party to .it, or unless in some legal proceeding jurisdiction of his person had been obtained. Even, therefore, if the action had been prosecuted in England under a statute similar to ours, I think the plaintiff could not rely for a recovery upon what are (erroneously) called in this case the extent and inquisition, for the reason that the proceeding was wholly ex parte and liable to a jurisdictional objection. He would be driven therefore to his original cause of action.
But in this state we have no writ of extent—no proceedings in any way analogous; and the plaintiff institutes the ordinary action to recover his debt. In his complaint it is very apparent that he sets forth all the facts, independent of the extent and inquisition, which he would have set forth if he had been suing upon the original cause of action alone. But he sets forth also the extent and inquisition; not, as tin this motion he alleges, as the substantive cause of action, but as a fact *209 in the history of the cause of action, giving at most precision and certainty to his claim, and furnishing a date from which to charge interest. On the other hand, the defendant claims, that it is put forth as the real and substantial cause of action, the record on which the plaintiff relies for a recovery; and that the other allegations are only by way of introduction or inducement. But it is clear to my mind that it is not a record, in the ordinary sense of that term; that is, a matter conclusive upon the parties, incapable of contradiction, and importing absolute verity. In a restricted sense it is a record, like a recorded mortgage or a recorded deed; that is, it is entered of record. But it has not even the force of a recorded deed or mortgage, for they purport to be the act and to bear the signature of the adverse party; whereas this is a wholly ex parte proceeding, and would have no more inherent force than a judgment, decree or record, made up on the party’s own motion, without notice to the adverse party, in a case where the practice of the court required the facts in the complaint to be verified by a disinterested witness. I think such a proceeding, independent of a statute giving it efficacy, can have no such force by the principles of the common law, as a substantive cause of action, as would allow of its being declared on as such, or as having inherent vitality independent of the aliment or support it derives from the original cause of action. If this be so, then the (so called) “ extent and inquisitidn” amount to nothing as a cause of action; and if they are ineffectual for that purpose, they are also ineffectual to deprive the plaintiff of the benefit of the circumstances under which the original cause of action arose. In other words, the plaintiff has not, even if he originally attempted to do so, succeeded in so altering, merging or extinguishing his original claim, as to give it a new character or make it a new thing. The present action is still an action to recover money or property embezzled or fraudulently misapplied by a public officer; or for misconduct or neglect in office.
*210 [New York General Term,
September 20, 1858.
Davies, Sutherland and Pogeboom, Justices.]
The result at which I have arrived upon this part of the case, contrary, I am free to say, to my original impressions, makes it unnecessary for me to examine the question whether in case the plaintiff had succeeded in transforming his original claim into a judgment, he would thereby have forfeited the right to arrest the defendant incident to his claim 'in its original character. Upon that subject the authorities, so far as they have gone, are conflicting. Justice Mitchell of the supreme court, in Goodrich v. Dunbar, (17 Barb. 644,) maintains the affirmative of this proposition; while Justice Wood-ruff of the superior court, in Wanzer v. De Baun, (1 E. D. Smith, 261,) as strenuously upholds the negative. I do not think the present case calls for a decision of that question.
!• am therefore of opinion that the defendant is not entitled to be discharged from arrest upon the ground argued before us on the appeal, and that the order of the special term should be affirmed with costs,