## NEW YORK COMMON PLEAS.

CITY BANK agt. MORRIS LUMLEY, and ten other cases.

Where a defendant in moving to discharge an *order of arrest,* predicates his motion on the plaintiff's *affidavits,* and to which he presents a response, he *waives* his right to object that the plaintiff's affidavits are *entitled in the cause.*

The laws of 1863 (*p.* 449), confers generally the authority to administer *oaths and affirmations* to be read in evidence and used in any of the courts of this state, without prescribing any particular *form of authentication.* And it was not the intention of the legislature to impose upon *Vice Consuls* duties in respect to this subject not imposed upon others.

Therefore, where a jurat to an affidavit is in the usual form, and states that the deposition was subscribed and sworn to in the presence of the Vice Consul of Canada, and he so certifies under his seal of office, it is sufficient.

The *arrest* of a person here in a civil action, for fraudulent representations in the purchase of property in a *foreign country,* of a foreign creditor, will be held good, where such property or its proceeds are brought here by him, although he could not have been arrested for such acts in that country. The *lex fori* and not the *lex loci* governs in such cases.

*Affidavits* to procure an order of arrest stating the material facts upon *information and belief* are sufficient, where they state the sources from which the information is derived, and the places of residence of the informants at such distance that it would be impracticable to procure their sworn statements in season to make a successful arrest. Especially where they contain positive and truthful statements enough to make out a *prima facie* case for arrest.

Where the evidence produced for an order of arrest is satisfactory that the large credit a debtor enjoyed just previous to his sudden failure, was used fraudulently to obtain a large amount of property, the fruits of which he might enjoy to the detriment of his creditors, an order of arrest should be granted by the judge and retained by the court.

*General Term, February,* 1865.

*Before* DALY, BRADY, *and* CARDOZO, *Judges.*

APPEAL by plaintiffs from an order at special term discharging defendant from an order of arrest.

ARTHUR & GARDNIER, *for plaintiffs.*

JAMES R. WHITING, *for defendant.*

By the court, BRADY, J. In these cases, the defendant feeling aggrieved by the orders of arrest, moved to discharge them. The order to discharge was granted upon

City Bank agt: Lumley.

the orders of arrest, the affidavits on which they were granted, and affidavits and papers annexed on the part of the defendant. The defendant succeeded on his motion, and the orders of arrest were discharged upon two grounds —first, that the affidavits on the part of the plaintiffs were on information and belief, and were not in conformity to the case of *De Weerth* agt. *Feldner*, decided in this court, and reported in 16 *Abb. Pr. Rep.* 295 ; and, secondly, because the judge at special term, on the whole case could not say that the defendant obtained the property purchased by him with the fraudulent intent not to pay for it. The presiding judge seems to have arrived at that conclusion, however, as will be seen, upon rejecting affidavits which he thought could not be considered. The plaintiffs' appeal from the order discharging the orders of arrest and the defendant, presents on the appeal objections in their nature preliminary, which must be passed upon before considering the basis of the opinion delivered at special term. They are as follows :

1. That the affidavits on the part of the plaintiffs being entitled in an action which was not pending when they were made, are nullities.

2. That the affidavits were altered after they were sworn to, having been originally prepared and sworn to for the purposes of being used as the exigency of the case or proceeding might require.

3. That the affidavits sworn to before the Vice Consul in Canada, were not properly authenticated.

4. That the alleged fraud was not committed within the jurisdiction of this state, or the United States; that all parties are foreigners, and that our statute relative to arrests does not apply to such cases.

I have not referred to the specific objection to the affidavit of Mr. Brown, for the alleged mistake in the venue, nor shall I consider it. In the view which I entertain of this case, that objection is too trifling to be considered at

all. In reference to the first objection there are several answers.

1. It appeared that all the objections recited were taken on a previous motion made in the case of the City Bank against the defendant, and were overruled by the presiding judge, the motion to discharge the order of arrest having been denied, with liberty to renew; and the defendant has availed himself of the liberty given.

2. The effect of entitling an affidavit to hold to bail, though said to be a nullity, has never been so declared in any case involving the question which I have been able to find after diligent search. In the case of *Milliken* agt. *Selye* (3 *Denio*, 54), Judge BRONSON has collected certain cases in this state and elsewhere. The affidavit in that case, however, was one required to be made by the plaintiff, or some one on his behalf, and delivered to the sheriff with the writ of replevin. None of the decisions in this state, referred to by Judge BRONSON, involved the question. They are cases of *certiorari* and *mandamus*, or where the affidavits were defectively entitled. The English adjudications show the practice to be one which fluctuated until finally settled by a rule of the king's bench, and adopted by the common pleas for the sake of uniformity. In *Hollis* agt. *Brandon*, cited by Justice BRONSON, Ch. J. AYRE said: " but when the affidavit says, William Brandon, defendant, I should much doubt whether it would be bad merely because it was entitled ' Edward Hollis, plaintiff, and William Brandon, defendant,' before the commencement of the cause." On reference to *Tidd's Pr.* (1 *vol.* 183), we find the following statement in reference to the affidavit to hold to bail : " There being no action depending in court at the time when the affidavit is made, it ought not regularly to be entitled in the cause, and in one case the king's bench discharged the defendant out of custody on common bail, on account of its being so entitled. But in a subsequent case they thought, as the practice had obtained so long of adding

a title to affidavits of this kind, it would be too much to determine that such practice had been erroneous, particularly as this had been a mere question of form, and did not interfere with the justice of the case. A rule of court, however, has since been made in the king's bench that "affidavits of any cause of action before process sued out to hold defendants to bail, be not entitled in any cause, nor read if filed." This is the practice referred to in the cases in this state upon the propriety of entitling affidavits, and we see that it was once held to be a mere question of form, not affecting the justice of the case. In *Pindar* agt. *Black* (4 *How. Pr. Rep.* 95), Justice HARRIS, although questioning the reason of the rule and its propriety, held that now the error if any, was one which did not affect the substantial rights of the adverse party, and should be disregarded under section 176 of the Code. In this case, nearly all the affidavits which we are considering, mention the defendant's name. He is styled the defendant, Morris Lumley, and it is not necessary to refer to the title to ascertain who the defendant is, as it was in *Milliken* agt. *Selye, supra.* And it may be further remarked that the practice has prevailed since the Code, of entitling these affidavits, and that it has obtained so long as to make it unreasonable in this case, at least after the action of the defendant in reference to the affidavits, to declare them to be erroneous. It may be further remarked, that the practice thus establised was enforced in England and in this state, where the objection was taken in the first instance, and not where there was any attempt to answer the affidavits, as in this case. Here the defendant predicated his motion on the plaintiffs' affidavits, to which he presented his response, and if he did not adopt them, at least waived his right to object to them under the circumstances, relating as the information did to a question of practice. (*Noble* agt. *Prescott*, 4 *E. D. Smith,* 139; *Ubsdell* agt. *Root*, 3 *Abb. Rev.* 142; *Radway* agt. *Graham*, 4 *Abb. Rep.* 468.)

City Bank agt. Lumley.

For these reasons, the first objection is declared untenable. As to the second objection, we say that the proofs submitted do not warrant the charge made. Mr. Gardnier states that the affiants were in each instance advised of the use to be made of their affidavits, and this answers the suggestion as to alteration. I say suggestion, because it is a grave charge to make upon slight evidence.

In reference to the third objection, it is perhaps only necessary to say that the view expressed at special term is correct. The third section of the act of 1863 (*Laws, p.* 449), confers generally the authority to administer oaths and affirmations to be read in evidence and used in any of the courts of this state, without prescribing any particular form of authentication. The jurat to the affidavits is in the usual form. It states that the deposition was subscribed and sworn to in the presence of the vice consul, and he so certifies under his seal of office. It is sufficient, and so far as the act of 1854 (*Laws, p.* 475) provides to the contrary, it must be regarded as abrogated. It could not have been the intention of the legislature to impose upon vice consuls duties in respect to the same subject not imposed upon others. If it had been the power conferred by section 3, *supra,* would not have been so general. We are referred to the case of *Blason* agt. *Bruno* (33 *Barb. S. C. R.* 520), as an authority for the proposition stated in the fourth objection. It is a special term case, in which it is held, not that our statute relative to arrests does not apply to frauds committed by foreigners without our jurisdiction, but that the removal or fraudulent disposition of property contemplated by that statute must be within the limits of this state.

Judge INGRAHAM states distinctly that a different rule exists where the defendant obtains the property fraudulently in a foreign land and brings it here. The case is not, therefore, an authority for the doctrine asserted by the defendant's counsel. We find, too, on examination of

earlier cases, that the remedy is governed by the *lex fori* (*Smith* agt. *Spinola*, 2 *Johns. Rep.* 198 ; *Siccard* agt. *Whale*, 11 *Johns. Rep.* 194 ; *Pecks* agt. *Hozier*, 14 *Johns. Rep.* 364) ; and notwithstanding that by the law of the country where the transactions arose, and of which the parties were residents, the defendant could not be arrested (*Smith* agt. *Spinola*, *supra*) ; see also *Gans* agt. *Frank* (36 *Barb. Rep.* 320), and *Peel* agt. *Elliott* (28 *Barb.* 200), in which the rule stated was acquiesced in as suggested by Judge CARDOZO (*see also De Weerth* agt. *Feldner*, 16 *Abb.* 295). The rule that in cases like this the *lex fori* governs, is too well established, and has too many reasons on which it rests to justify its disturbance by any other than the court of last resort. We are thus brought to the consideration of the reasons assigned for discharging the orders of arrest. As to the first : The case of *De Weerth* agt. *Feldner*, *supra*, is not analogous to this. The deponent in that case stated the sources of his information to be threefold, viz : A letter written by the plaintiff, another by the defendant, and a notarial act drawn up at Etherfeld, in Prussia, and certified by the Consular Agent of the United States at Bremen. He did not annex the letters and notarial act, or copies of them. He stated his own conclusions from their perusal and examination. For this reason the order was discharged. The rule is well settled that if the information is predicated of documentary evidence or other written papers, the documents or papers must be set out in some mode. But these cases do not depend wholly or chiefly upon any such evidence, and the rule to be applied is different. That rule is stated in the case referred to by Judge DALY, upon consideration of the authorities bearing upon the subject. It is that the information must be set out, that is, the facts and circumstances alleged against the defendant, the sources of that information, and a good reason why a positive statement cannot be procured. The object is not only to enable the judge to determine for

himself whether the fraud has been committed, but to protect the defendant from a statement of information coined and not in fact derived from any person or source.

The affidavits upon which the orders of arrest were granted herein, were not entirely upon information and belief, either as to the indebtedness charged or the facts and circumstances grouped to sustain the allegation of fraud. But where information is set forth, the information itself, and the names and places of business of the persons by or from whom such information was given or obtained, are stated. And it appears also not only that such persons are residents of Canada or England, but the affidavits of some of them were produced and acted upon in granting the orders of arrest. We have, therefore, the necessary elements required in the affidavits which recite only information, viz.: the information, the source from whence it was derived, and the place of residence of the informants, at distances from this city, rendering it reasonable to dispense with the sworn statements of the informants to procure the arrest of a person who had hurriedly left his own domicil for foreign places, and whose flitting thence might take place before the affidavits could be procured—more particularly when, as in this case, there was enough disclosed to justify the belief *prima facie*, that the charge of fraud was truly made. For these reasons I think the affidavits were sufficient to put the defendant to his answer. I think it may be said in addition, that when affidavits in cases like these are based upon information, and it appears from all the evidence submitted that they contain truthful statements, although not in form *secundem artem*, they should not be rejected. They then become positive statements, as it were, and the court can see that the mischief which might otherwise ensue, cannot happen.

These views, embracing all the questions of law presented on the appeal, leaves but one branch of these cases undisposed of, and that is whether the proofs establish the

fact that the defendant was guilty of a fraud, for which he could be arrested under section 179 of the Code. In stating my views on this subject, I shall not spread out all the details which have influenced my judgment, but state generally the prominent facts and circumstances which have controlled it. We find that in June, 1862, the defendant was in good credit and prosperous. His business was increasing, and so much so that he sent his son Edward to Europe to make purchases to meet the demands of his large and increasing Canada trade; and he requested Mr. Gunn to say, if Edward had occasion to refer to him while in England, that he had done a very large and profitable business, and paid all his accounts punctually, and his relations with the banks were such that he could get anything he wanted, and that he felt himself quite independent of everybody. His son went to England and made purchases to a large amount, and Mr. Gunn, honestly believing it to be so, stated to the English merchants who made inquiries of him, that the defendant was a man of large means and perfectly able to meet all engagements he would make. In October, 1862, he stated to Mr. Stephens, one of the plaintiffs, and from whom he was making purchases, that he had carried on a large and profitable business, and had made a great deal of money; that he was then possessed of abundant means, and would be perfectly able to pay for all his purchases punctually when the time of credit had expired; and further, that he was not making any other new accounts; not increasing the aggregate amount of his purchases, nor engaged in speculations, but buying for his regular Canada trade. And it may be here remarked that the defendant, to numerous creditors, made the statement that the purchases made by him were for his Canada trade. It also appears that the defendant's son and agent, Edward Lumley, represented to Mr. Woodhouse that his father was a merchant of long standing in Toronto, and had done a very large and prosperous business, and that if he should

sell goods at fair prices the defendant would do a very large trade with him. It also appears that the goods purchased of the Messrs. Bottomley, were sold to the defendant on representations through his son and agent, Edward, that they were for the branch of the defendant's house at Montreal, and were to be manufactured there because it could be done cheaper there than at Toronto; and it is alleged that similar representations were made to several persons from whom goods were purchased. And it may be here remarked as corroborative of the fact that such representations were made, that they are in accordance with the object of Edward's visit to England, as declared to Mr. Gunn by the defendant himself. The purchases made and the money obtained by the defendant during the fall of 1862, amount at least to one hundred and fifty thousand dollars, as appears on the proofs submitted. Notwithstanding the defendant's asserted prosperous condition, his financial facilities, and his increasing Canadian trade in the summer and fall of 1862, he closed his place of business in January, 1863, in Montreal, having previously ceased to do business ostensibly in Toronto. Many of the goods that he had ordered for his Canadian trade, had in the meantime been shipped to New York, although it does not appear that he had any place of business there. The defendant's stopping business and payment at the time mentioned, namely, January, 1863, were circumstances which, notwithstanding his prosperous career, might have been explained or accounted for by some one of the many vicissitudes to which all commercial men are exposed, and that too notwithstanding he had declared he was opening no new accounts, and was not speculating. The occasion presented itself long before his arrest, but he declined to make any explanation, failed to meet his creditors in Canada, as he promised to do for that purpose; fled from thence, and when arrested here, and when asking to be discharged from arrest, continues to be as silent on the subject of his sud-

den embarrassments and change of fortune as before. He does not deny the statements made by Mr. Gunn—he does not deny that he made the representations charged upon him personally as to solvency, prosperity and financial ability, or as to the object of his purchases herein set forth, but alleges that he contracted " no debt in Toronto or elsewhere, fraudulently, or with intent not to pay the same; and that he never diverted the place to which the shipment of the said goods was to be made, but the same was left to the discretion of his said agent, who exercised his own judgment in regard thereto."

We may well pause here and ask what was the cause of his failure ? What occurrences so destroyed his prosperity that with credit unimpaired and business large, increasing and profitable, he was unable to meet his engagements in so short a time, and compelled to fly from his home and business ? The alleged sale of some goods in New York, and the alleged payment of their proceeds, is no answer to the questions. Unless the defendant was engaged in some unlawful enterprise, the revelation of which would subject him to other penalties, going from Scylla to Charybdis, it is fair and just to presume that some explanation would have come from his lips of these extraordinary transactions, and his extraordinary conduct. His reticence satisfies me that the credit which he enjoyed was used fraudulently to obtain a large amount of property, the fruits of which he might enjoy, to the detriment of his creditors.

I concur with Judge CARDOZO, in his conclusion expressed on the first motion, that the defendant was guilty of a huge fraud, and with Justice MONK, that the defendant was guilty of a fraud on a scale quite unusual, and I think that the order discharging the orders of arrest should be reversed, with $10 costs.

DALY, F. J., concurred.

CARDOZO, J. I adhere to the views I expressed at special term, and I think the order should be affirmed.