ROBERT CROMBIE *vs.* WILLIAM H. LITTLE and another.

## December 28, 1891.

**Mortgage Foreclosure—Service of Summons.—**The act of March 5, 1853, (Pub. St. 1858, p. 480,) was intended to make both the form of process and the manner of its service in equity actions conform to that which obtained in other civil actions.

**Same—Publication of Summons.—**An action to foreclose a mortgage upon real estate was one the subject of which is real property, and in which the relief demanded consisted partly in excluding the defendant from any interest therein, within the meaning of the fifth subdivision of Laws 1864, c. 42, § 1, providing for the publication of summons.

**Same—Affidavit for Publication, when to be Made.—**An affidavit for the publication of a summons need not be sworn to on the day on which the action is commenced. All that is necessary is that it be sworn to within such reasonably brief period before the publication that no presumption can fairly arise that the state of facts has changed in the mean time.

**Same—Affidavit Entitled in Action not yet Begun.—**Such an affidavit is not void because entitled in an action not actually commenced when the affidavit was sworn to.

**Same—Affidavit Sworn before Deputy Clerk—Sufficient Jurat.—**Where an affidavit is sworn to before the deputy clerk of the district court, a jurat signed by him, "A. B., Clerk, by C. D., Deputy," is good.

**Same—Filing of Affidavit.**—If the affidavit for publication is filed with the clerk of the district court, the fact that he fails to keep his office at the county-seat will not invalidate the publication of the summons.

**Same—Unauthorized Sheriff's Deed Valid as Certificate.**—A certain instrument purporting and intended to be a "sheriff's deed" on foreclosure sale, which contained all that was required in a "certificate of sale," *held* operative as a *certificate*, although unauthorized as a *deed*.

Action brought in October, 1890, in the district court for St. Louis county, to determine defendants' adverse claim to a vacant lot in Duluth. Trial before *Stearns*, J., who ordered judgment for plaintiff. Appeal by defendants from an order refusing a new trial. The lot in dispute is part of a tract patented to the defendant Little by the United States on October 5, 1860, on an entry made by him on December 1, 1858. The plaintiff claimed title under the purchaser at a sale of the land made August 5, 1865, in a suit in the same court to foreclose a mortgage executed December 1, 1858, by the defendant Little to John D. Howard, and the validity of the proceedings in that suit was the only matter of controversy in this. The complaint in the foreclosure suit, the summons, with the sheriff's return, and the affidavit for publication of the summons, are each indorsed : "Filed Sept. 30, 1864. F. W. Ely, Clerk, etc., per J. R. Carey, Deputy." The affidavit, made by John D. Howard, is entitled in the action, the venue is St. Louis county, and it states that affiant "is plaintiff in the action above entitled ; that the subject of said action is real property situate in said county, being a mortgage lien thereon;" and also states "that said defendant is not now a resident of said state," and that affiant has made diligent inquiries for him, and has reason to and does believe he is not within the state, and "that said defendant is a proper party to said action," and that, to the affiant's personal knowledge, the defendant left the state on or about September 1, 1859, and has not returned, as affiant firmly believes. The jurat is: "Sworn to and subscribed before me, this 24th day of Sept., 1864. F. W. Ely, Clerk of District Court, St. Louis County, per J. R. Carey, Deputy," with no seal affixed. It was shown that in 1864, the county furnished no office for the clerk of the court, and the papers of his office were kept at his or his deputy's house, and they were not brought

together in any office provided by the county until 1871. During 1864 and until 1866, Carey, the deputy-clerk, lived at Oneota, in St. Louis county, and he testified that the above quoted file-marks were made by him at the time of their date, and the papers were then laid away with the other papers in his house, and he made no entry of the filing in any book. There was also evidence that the affidavit for publication was sworn to at the time of filing, September 30th, and not on the day stated in the jurat, September 24, 1864. An affidavit of publication of the summons was made November 18, 1864, and filed with Carey, the deputy-clerk, December 24, 1864, and showed a weekly publication of the summons for six weeks, beginning October 7, 1864. On December 16, 1864, an affidavit of no answer or appearance by defendant was made, and on December 17th an order was made referring the cause to a referee to hear the proofs and report a judgment. This affidavit and order were filed with Carey, the deputy-clerk, on December 24, 1864. On February 3, 1865, the referee's report was filed, ordering judgment for a sale of the property, etc., and on April 18, 1865, at a general term of the court, an instrument was made and signed by the judge of the court, which recites the reference and confirms the report, and finds the amount due on the mortgage, and proceeds, "It is ordered, adjudged and decreed," etc., in the usual form of judgments in foreclosure suits, and concludes, "Let judgment be entered accordingly." This was filed and recorded by the deputy-clerk May 4, 1865. The files also show a copy of this instrument, certified June 15, 1865, to be "a copy of judgment and decree filed and recorded in my office," followed by a precept to the sheriff of the county "to execute the foregoing and make report thereof in due form," (the certificate and precept being signed by the clerk by Carey, as deputy,) and having indorsed upon it the sheriff's return showing the receipt of the "special execution," and a levy pursuant thereto, and a sale made pursuant to advertisement on August 5, 1865. On that day the sheriff executed and acknowledged a certificate of sale to John D. Howard, the plaintiff in the suit, which stated that he had made the sale "by virtue of an execution to me directed and delivered," but did not state on what judgment or from what court the execution issued. This certificate

was recorded in the registry of deeds on March 19, 1866. On August 28, 1868, after he had gone out of office, the sheriff who made the sale executed and delivered to the purchaser an instrument in the form of a deed of conveyance of the property, and stating by way of recital the rendition and terms of the judgment in the foreclosure suit of John D. Howard vs. William H. Little in the district court for St. Louis county, (stating the date of such judgment as February 8, 1865,) the sale made by the sheriff on August 5, 1865, pursuant to such judgment and after due notice, and that there had been no redemption. This instrument was recorded August 29, 1868. The objections and exceptions taken by defendants to these different instruments and items of proof are stated in the opinion.

*S. L. Smith* and *J. W. Bull*, for appellants.

*Warner, Richardson & Lawrence* and *R. R. Briggs*, for respondent.

MITCHELL, J. The question involved in this case is the validity of the foreclosure by action in 1864–65 of a mortgage executed by defendant Little, in which the summons was served by publication. While a great number of points have been made against this foreclosure, yet, in our judgment, the whole case turns upon the validity of the service of the summons by publication; for, if it was duly served so that the court acquired jurisdiction to proceed in the action, everything in the subsequent proceedings to which objection is made would be, at most, merely irregularity or error, which would not affect the validity of the judgment or of the title acquired under it.

The first and preliminary question is, what statute then governed the manner of service of the summons in such actions? The act of March 5, 1853, (Pub. St. 1858, c. 57, p. 480,) provided:

"Section 1. That all equity and chancery jurisdiction * * * shall be exercised, and all suits or proceedings to be instituted for that purpose are to be commenced, prosecuted, and conducted to a final decision and judgment, by the like process, pleadings, trial, and proceedings as in civil actions, and shall be called civil actions.

"Sec. 2. All suits, applications, and proceedings now authorized by statute to be commenced, prosecuted, and conducted in chancery or enforced by chancery jurisdiction, including the foreclosure and

satisfaction of mortgages, shall hereafter be commenced, prosecuted, and conducted to a final decision and judgment by the like process, pleadings, trial, and proceedings as in civil actions."

The contention of defendants' counsel is that this only provided for a change in the form of the process from a chancery subpœna to a summons, but that until 1866 the only law on the subject of notice by publication to non-resident defendants in foreclosure suits was the old chancery practice, (Rev. St. 1851, *c.* 94, § 57,) in which the court made an order for the appearance of the defendant, which order (and not the summons) was required to be published. Such a proposition would, we apprehend, be quite novel, as well as startling, to those of the bar who were engaged in the practice of law in this territory and state in those early days. We have no doubt whatever but that the act of 1853 was designed to conform, not only the form of the process, but also the manner of its service in equity suits, to that which obtained in all other civil actions. Such was always the understanding and practice of the bar.

It is urged, however, that, if such is the proper construction of that act, there was not, until 1866, any statute authorizing the publication of the summons in actions of foreclosure, inasmuch as they did not fall within any of the classes of cases specified either in Rev. St. 1851, *c.* 70, § 50, or in Laws 1864, *c.* 42. This proposition is equally novel and startling, for, if correct, it would invalidate almost every foreclosure by action for a period of 13 years, where there were non-resident defendants. All we deem necessary to say on this point is that the subject of such an action is real property, the relief demanded in which consists partly in excluding the defendants, whether mortgagors or subsequent purchasers or incumbrancers, from any interest or lien therein; and therefore it falls within at least the fifth subdivision of section 1, *c.* 42, Laws 1864, which was the statute in force when this foreclosure action was brought, and which must control in determining the validity of the publication of the summons therein.

The most substantial, and as we think the only important, point in the case is as to the sufficiency of the affidavit for the publication of the summons. The statute of 1864 introduced a very radical,

and, as we think, a very impolitic, change in the law, in that no judicial investigation of the sufficiency of the affidavit and no order of court authorizing the publication of the summons were any longer required. All that was necessary was that the party should file the statutory affidavit, and then proceed to publish. It will also be observed that, unlike many statutes on the subject, it was not necessary that the required facts should be "made to appear" or be "shown" by the affidavit; all that was necessary being that the affidavit should "state" such facts,—a distinction which the learned counsel has apparently failed to observe, judging from the cases which he cites. The facts that the defendant Little was not a resident of this state; that the affiant (the plaintiff Howard) had made diligent inquiry for him, and had reason to believe, and did believe, that such defendant was not therein,—were undoubtedly sufficiently stated in the affidavit. But, in addition to this, the statute further required the affidavit to state "that a cause of action exists against such defendant, or that he is a proper party to the action relating to real property in this state." The statement of the affidavit in that regard is "that the subject of said action is real property situate in said county, [St. Louis county, Minnesota,] being a mortgage lien thereon,  *  *  * and that said defendant is a proper party to said action." Bearing in mind that it was not necessary that the affidavit should state the facts showing why or how the defendant was a proper party to the action, but merely the ultimate fact itself, we think this was clearly a substantial compliance with the statute.

The deputy-clerk was authorized to administer oaths, and the jurat, whether in the most approved form or not, is sufficient. *Muller* v. *Boggs*, 25 Cal. 175, 186. The clerk of the court, as such, had no seal, and was not required to affix a seal in administering oaths. *State* v. *Barrett*, 40 Minn. 65, (41 N. W. Rep. 459.)

The fact that the affidavit upon its face purports to have been sworn to September 24th, six days before the complaint was filed, and 13 days before the first publication of the summons, is not material. If the extrinsic evidence was admissible, it was ample to justify the conclusion of the trial judge that it was in fact sworn to on September 30th, the same day the complaint was filed. If it be

true, as defendants claim, that the affidavit must be sworn to the same day on which the action is commenced, then this must be on the very day of the first publication of the summons; for, except for the purposes of preventing the statute of limitations from running, an action is commenced by *service* of the summons, and not, as counsel assumes and as is the case in some states, by *filing* the *complaint* and *issuing* a summons. Pub. St. 1858, *c.* 60, § 48; Gen. St. 1878, *c.* 66, § 52. The rule contended for would be not only contrary to the general understanding and practice, but an unreasonable and exceedingly inconvenient one. In the absence of any provision of statute regulating the matter, we apprehend that all that is necessary is that the affidavit be sworn to within such a reasonably brief time before the publication of the summons that no presumption could fairly arise that the state of facts had changed during the period intervening. This has always been the rule in the case of affidavits for attachments, except in a line of decisions in Michigan, largely based upon the peculiar language of their statute, but which were so painfully and impracticably technical that the rule was changed by statute. Drake, Attachm. § 111, and cases cited.

Another objection to the affidavit is that it was void because entitled in a cause not yet commenced. There are undoubtedly decisions which go to this length, but they are, in our judgment, devoid of reason, and based upon a frivolous technicality. We do not suppose there was ever an affidavit made in this state for a replevin, garnishment, attachment, or publication of a summons that was not thus entitled, although, strictly speaking, the action was not yet commenced when the affidavit was sworn to. Even at common law it was, at most, a mere irregularity, which, in the language of the court in *Clarke* v. *Cawthorne*, 7 Term R. 317, "did not interfere with the justice of the case." A prosecution for perjury based on such an affidavit would lie. *City Bank* v. *Lumley*, 28 How. Pr. 397. See, also, *People* v. *Sutherland*, 81 N. Y. 1, 9.

There is no question but that the plaintiff in the foreclosure suit filed the affidavit for publication with the clerk of the district court for St. Louis county on September 30th, but it does appear that, there being no court-house in Duluth, the county-seat, and the county

not having at that early day provided any buildings for offices, the different officers were in the habit of keeping the public records and files at their respective residences, and that during the years 1864 and 1865 the clerk of the court or his deputy kept the records and files of the district court at his residence in the village of Oneota, in the vicinity of, but outside the limits of, Duluth. The plaintiff having done all that he was required to do or could do, and the affidavit having been in fact filed with the clerk of the court, the jurisdiction of the court could not be affected by any neglect of duty on part of the clerk in the matter of the care or custody of the records.

The same suggestion applies with still greater force to the matter of filing the complaint, for, even if it had not been filed at all, yet, the summons being in due form and duly served, this was sufficient to confer jurisdiction on the court. The failure to file the complaint would have been good ground for setting aside the summons, and might have been for vacating the judgment, but would not render the judgment void. See *Hotchkins* v. *Cutting*, 14 Minn. 408, (537;) *Foster* v. *Wood*, 30 How. Pr. 284; *Lane* v. *Innes*, 43 Minn. 137, (45 N. W. Rep. 4.) Little never appeared in the action, but, if he had, it would have been the duty of the plaintiff's counsel to furnish him with a copy of the complaint. Hence, the suggestion that, if he had gone to Duluth, he could not have found the complaint, and hence could not have answered it, has very little force.

It can hardly be necessary to say that the affidavit of publication of the summons was sufficient. The affidavit was made November 18th, and the first publication was October 7th. This was time enough for 7 publications, although the full 42 days had not yet expired when the affidavit was sworn to. The fact that the proof of publication and of default was not filed until several days after the reference of the case to a referee is fully covered by *Burr* v. *Seymour*, 43 Minn. 401, (45 N. W. Rep. 715.) The jurisdiction of the court and its right to proceed in the action depended upon the existence of the facts, and not upon the proof of them.

After the time for answering had expired, the court ordered a reference of the case "to hear the proofs of said action, and report a judgment therein." The referee filed his findings of fact and con-

clusions of law, accompanied by the note and mortgage upon which the action was brought. Thereupon the judge himself signed a judgment or decree, which was entered and recorded by the clerk. It is claimed that this reference was unauthorized, and worked a discontinuance of the action, because a reference can only be ordered when there is an "issue." If the reference was void, we fail to see how it could have worked a discontinuance of the action. If not void, it could, at most, have been only an irregularity, (even that we do not concede,) which was immaterial, inasmuch as the judge himself rendered the judgment. Notwithstanding that this decree concludes, "let judgment be entered accordingly," it contains the apt language of, and is in itself, a judgment. The record of it by the clerk was sufficient, and the book in which it was entered is, under the decisions of this court, a good judgment-book, notwithstanding its very informal character.

The copy of this judgment, with direction to the sheriff indorsed to execute it, was sufficient authority to him to proceed to sell the premises as directed by the decree. This was in accordance with the usual practice at that time. This copy of the judgment, with the indorsement thereon, might properly be termed "a special execution."

The sheriff executed to the purchaser a certificate of sale, which was in proper form, except that it did not state in what court the judgment had been rendered. We are inclined to think that such a certificate was good, at least as against Little, the defendant in the suit. But it is said that it became void because not recorded within 20 days; and perhaps the evidence shows that such was the fact. But, if true, this did not render the *sale* void. The purchaser had a right to obtain another certificate from the sheriff who made the sale. On August 28, 1868, the purchaser obtained from the ex-sheriff who made the sale what purported to be a sheriff's deed of the premises, which was filed for record the next day. Conceding that the first certificate had become void, and that there was at that time no law requiring or authorizing the execution of a sheriff's deed, or, if so, that the ex-sheriff was not the party authorized to make it, also that the defendants' time for redeeming would not begin to run until a certificate of sale was filed, still the ex-sheriff who made the sale was

the proper party to make a new certificate; and the so-called "deed," even if not operative as such, was good as a certificate of sale, for it contains, by way of recital and positive statement, everything required by the statute, except that it does not, in terms, state that the land was subject to redemption. But it does state all the facts from which it followed that it was subject to redemption, as a matter of law, which every man is presumed to know. We have not overlooked the fact that there is an error in this deed as to the date of the judgment, the date of filing the referee's report having been inserted instead of the date of the rendition of the judgment by the court. But this is not important, as the judgment is sufficiently described to identify it, so that no one could be misled by the error as to date.

Many of the points considered are so clearly not well taken that we would not have felt called upon to notice them but for the large interests involved, and the earnestness with which the learned counsel has argued them.

Order affirmed.